## Case No. 1,793.

BRADSTREET et al. v. NEPTUNE INS. CO.

[3 Summ. 600; 2 Law Rep. 262; 2 Hunt, Mer. Mag. 508.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1839.

JUDGMENT—FOREIGN ADMIRALTY SENTENCE—COLLATERAL ATTACK—CONCLUSIVENESS—MARINE INSURANCE—LOSS—SEIZURE AND CONFISCATION.

1. Where the proceedings in a foreign tribunal are in all respects unexceptionable, the allegations of facts, as occurring in those proceedings, are, in general, conclusive on the parties. But if the defence be, that the proceedings were not merely irregular and illegal, but were founded in a positive fraud, they are not con-

clusive on the parties; but they may be disproved by evidence aliunde.

[Cited in Magoun v. New England Mar. Ins. Co., Case No. 8,961; The E. W. Gorgas, Id. 4,585.]

2. The sentence of a foreign court of admiralty and prize in rem is, in general, entirely conclusive on all parties in interest, and for collateral purposes.

[Cited in Cushing v. Laird, Case No. 3,509; Windsor v. McVeigh, 93 U. S. 279; Cushing v. Laird, 107 U. S. 80, 2 Sup. Ct. 204.]

3. Semble, that no sound distinction can be made between a sentence pronounced in rem by a court of admiralty and prize, and a like sentence pronounced by a municipal court upon a seizure or other proceedings in rem.

[Cited in Windsor v. McVeigh, 93 U. S. 279.]

4. But this rule proceeds on the ground, that the court, pronouncing the decree, had jurisdiction over the cause, and that the thing was either positively or constructively in its possession, and submitted to its jurisdiction.

[Cited in The Trenton, 4 Fed. 661.]

5. In respect to the jurisdiction of courts of prize, acting in rem, the courts of other nations are competent to inquire into and ascertain whether there has been any excess of jurisdiction; but the judgments of municipal courts, when the res is in possession of the sovereign, must, ordinarily, be conclusive upon all foreign tribunals.

[Cited in Wisconsin v. Pelican Ins. Co., 127 U. S. 291, 8 Sup. Ct. 1374.]

6. But in all cases, where the sentence of a foreign court in rem is sought to be held conclusive on the parties, it must appear, that there have been proper judicial proceedings, upon which to found the decree, and that there was some personal or public notice of the proceedings to the parties in interest.

[Cited in Burnham v. Webster, Case No. 2,179; The Globe, Id. 5,484; Mathewson v. Sprague, Id. 9,278; Harris v. The Henrietta, Id. 6,121; The N. W. Thomas, Id. 10,386; In re Shepard, Id. 12,753; Windsor v. McVeigh, 93 U. S. 279; The Ann, 8 Fed. 927; The J. W. French, 13 Fed. 922. Applied in Sabariego v. Maverick, 124 U. S. 293, 8 Sup. Ct. 478.]

7. Therefore, where a vessel was seized and confiscated by the courts of Mexico, and it appeared by the record of the proceedings, that there was no suitable allegation of the offence, in the nature of a libel, and there was no statement of facts ex directo, upon which the sentence professed to be founded: Held, that the proceedings were not conclusive as to the existence of the laws of Mexico, the jurisdiction of the court, and the cause of seizure and condemnation.

[Cited in Windsor v. McVeigh, 93 U. S. 279.]

8. Where a policy of insurance contained a clause that the "insurer shall not be liable for any charge, damage, or loss, which may arise in consequence of seizure or detention for or on account of illicit or prohibited trade, or trade in articles contraband of war:" Held, that a seizure made bona fide, (however unfounded in fact), upon reasonable grounds, would be a legal and justifiable cause of seizure and detention, within the purview of the clause.

[See Church v. Hubbart, 2 Cranch (6 U. S.) 187.]

At law. This was an action [by Simon Bradstreet and others] on a policy of insurance on the schooner Gardiner of Gardiner, and the declaration alleged a loss by seizure, &c. The defendants admitting, that the vessel was seized by the Mexican government,

[1] [Reported by Hon. Charles Sumner. 2 Hunt, Mer. Mag. 508, contains only a partial report.]

averred, that she was so seized, and was detained and finally condemned on account of a violation of the revenue laws of Mexico, and to prove this averment, they produced a transcript of the record of the proceedings of the court against the vessel. The plaintiffs denied the existence of any such alleged law, or that any breach of any law was committed, or that the court had jurisdiction; and insisted, that the record was false, and that the vessel was confiscated and condemned arbitrarily and unjustly, and without a trial or an opportunity on the part of the master to make a defence or to examine witnesses.

The questions submitted to the court were: First. Does the record conclusively prove the existence of a law, or the jurisdiction of the court; or that the seizure, detention, and condemnation aforesaid, were on account of the violation of the revenue laws of Mexico, so that the plaintiffs are estopped from shewing that no such violation of law took place?

Second. Can the plaintiffs by law traverse the allegations in the record, that the master of the vessel was summoned to appear and defend his rights, and that the condemnation took place, after he had appeared in court, and been heard; and, if he can by law traverse these allegations, is the record still sufficient conclusively to prove such a seizure as will discharge the underwriters?

It was agreed by the parties that the case might, under the direction of the court, be sent to a jury to settle any facts which might be in controversy, in regard to which the record was not conclusive, on motion of either party. The policy, transcript of the record, and certain depositions were in the case, and were submitted to the court. The record of the proceedings in the Mexican tribunals consisted of a letter from the commissioner of the custom-house to the administrator of the custom-house of the department of Tobasco, dated Frontera, April 18, 1837; a letter from the latter to the district judge of that department; an order to summon the captain of the schooner, the attorney-general, and the administrator of the custom-house to appear at a hearing at St. Juan Baptista on the 28th of April, 1837; a return, that the citation had been served on these individuals; a record of the sentence, condemning the schooner; a statement of the refusal of the captain to sign the proceedings, and the proceedings respecting the sale of the vessel. The more important of these documents are referred to at length in the opinion of the court.

[Jury trial ordered.]

F. C. Loring, for plaintiffs.
B. R. Curtis, for defendants.

STORY, Circuit Justice. This is the case of an action on a policy of insurance underwritten by the Neptune Insurance Company

"for three thousand dollars on the schooner Gardiner of Gardiner, at sea or in port, for and during the term of one year, commencing the risk on the twenty-eighth day of September, 1836, at noon." There is a clause in the policy as follows: "It is agreed, that the insurers shall not be answerable for any charge, damage or loss, which may arise in consequence of seizure or detention for or on account of illicit or prohibited trade, or trade in articles contraband of war. But the judgment of a foreign consular or colonial court shall not be conclusive upon the parties, as to the fact of there having been articles contraband of war on board, or as to the fact of an attempt to trade in violation of the law of nations." The declaration alleges a loss by seizure of the government of Mexico during the term, for which the schooner was insured. The statement of facts, upon which the cause has been argued, admits the seizure; and the defendants contend, that the seizure and the subsequent condemnation of the schooner were on account of a violation of the revenue laws of Mexico. And to establish this defence, they produce an authenticated transcript of the proceedings of the Mexican court against the vessel, and of the decree of condemnation. The plaintiffs deny the existence of any such alleged laws of Mexico, or that any breach thereof was committed, or that the court passing the decree had any jurisdiction; and they insist, that the vessel was confiscated and condemned arbitrarily and unjustly, and without any trial, or any opportunity on the part of the master to make any defence, or to examine any witnesses.

The questions submitted to the court are: First; whether the record of the proceedings is conclusive as to the existence of the laws of Mexico, the jurisdiction of the court, and the cause of seizure and condemnation; so that the plaintiffs are estopped from controverting them, and shewing that there has been no violation of the revenue laws of Mexico. Secondly; can the plaintiffs by law traverse the allegations of the record, that the master of the vessel was summoned to appear and defend his rights, and that the condemnation took place after he had appeared in court and been heard? And if by law they can traverse these allegations, then is the record still sufficiently conclusive to establish that the seizure was such as will discharge the underwriters?

Supposing the proceedings before the Mexican tribunal to be in all respects unexceptionable, my opinion is, that the allegations in those proceedings, as to the appearance of the master before the court, and his being heard before the decree of condemnation, would be conclusive on the parties, and would not be traversable or re-examinable in the present cause. But if the defence be, that the proceedings were not merely irregular and illegal, but were founded in a posi-

tive fraud; and that in point of fact, the whole record was but a tissue of false accusations and false statements and false proofs, made up to cover the fraud in which the seizing and prosecuting parties were all confederate, I should think, that evidence was admissible to show that the master never was summoned, never did appear, and never was heard before the condemnation, in order to establish pro tanto the fraud. I know of no case, where fraud, if established by competent proofs, is not sufficient to overthrow any judgment or decree, however solemn may be its form and promulgation. But it would require the strongest evidence to establish such a defence, by testimony not only of the highest order, but also free from any, the slightest, suspicion of interest or bias.

But to pass to the consideration of the first point made at the bar. I do not meddle with the question, what is or ought to be the effect of a foreign sentence in personam; for that may be thought to be governed by some considerations not applicable to proceedings in rem. See, among other cases, Houlditch v. Donegal, 8 Bligh [N. S.] 301. That the sentence of a foreign court of admiralty and prize in rem is in general conclusive, not only in respect to the parties in interest, but also for collateral purposes and in collateral suits, not only as to the direct matter of title and property in judgment, but also as to the facts, on which the sentence professes to proceed, although formerly subject to much doubt and controversy, is now a point fully established in the courts of England and the courts of the United States. It is sufficient on this subject to refer to the cases of Croudson v. Leonard, 4 Cranch [8 U. S,] 434; Rose v. Himely, Id. 241; and Hudson v. Guestier, 6 Cranch [10 U. S.] 281. It does not strike me, that any sound distinction can be made between a sentence pronounced in rem by a court of admiralty and prize, and a like sentence pronounced by a municipal court upon a seizure or other proceeding in rem. In each case the sentence is conclusive, as to the title and property, and it seems to me, that it must be equally conclusive as to the facts, on which the sentence professes to be founded. This I think is the settled doctrine in England and in the courts of the United States. It is a just result from the whole reasoning in Rose v. Himely, 4 Cranch [8 U. S.] 241; The Mary, 9 Cranch [13 U. S.] 126, 142–146; and Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246.

Such is the general rule. But still it proceeds upon the ground, that the court, pronouncing the decree, had jurisdiction over the cause, and that the thing was either positively or constructively in its possession, and submitted to its jurisdiction. Even in cases of prize, if the vessel has never been captured at all, or if after capture she is rescued or recaptured, so that she is no longer under the dominion or possession of the captors, the sentence of a court of prize, professing to condemn her, would be a mere nullity. In respect to municipal seizures, the same rule must apply. The property must either be seized or be brought within the territorial jurisdiction, or at all events must be in the possession or under the control of the seizors, so as to be positively or constructively subjected to the dominion of the seizing sovereign, and his tribunals; otherwise the sentence pronounced will be a mere nullity, founded in usurpation. In respect to the jurisdiction of courts of prize acting in rem, as they are courts sitting under the law of nations, the courts of other nations are competent of themselves to inquire into and ascertain whether there has been any excess of jurisdiction, or not, without any resort to the laws of the particular country where the tribunal is established. But in respect to municipal courts, acting in rem, but deriving their authority solely from the territorial laws of the sovereign, they are and must, from the nature of the case, be presumed to be the best judges of the nature and extent of their own jurisdiction, and of its just and legitimate exercise. Their judgment, therefore, affirming that jurisdiction, must ordinarily be conclusive upon all foreign tribunals, subject, however, to this reserve, that the res is either within the territory, or is positively or constructively in the possession of the sovereign or his officers, so that the jurisdiction can, according to the law of nations, rightfully attach in such tribunals. I say ordinarily conclusive, because no foreign court can be permitted to sit as a court of errors to revise the decisions of municipal courts in the exercise of the jurisdiction conferred on them by the municipal laws. That would be to assume the final interpretation of those laws. But this doctrine again must be understood with its proper limitations, that the tribunal is recognised by the sovereign of the country as competent to act in the premises; which competency may be conclusively established from the express recognition of the sovereign, or his silent acquiescence in its decrees.

There is another element, which, it seems to me, constitutes an essential ingredient in every case, where the sentence of a foreign court in rem is sought to be held conclusive, as to the title to the property, and as to the facts, upon which it professes to be founded. That element is, that there have been proper judicial proceedings, upon which to found the decree; by which I mean, not that there should be regular proceedings according to the forms of our law, or even of the foreign law; but that there should be some certain written allegation of the offence, or statement of the charge, for which the seizure is made, and upon which the forfeiture is sought to be enforced; and that there should be some personal or public notice of the proceedings, so that the parties in interest, or their representatives or agents may know,

what is the offence, with which they are charged, and may have an opportunity to defend themselves, and to disprove the charge. It is a rule, founded in the first principles of natural justice, that a party shall have an opportunity to be heard in his defence before his property is condemned, and that the charges, on which the condemnation is sought, shall be specific, determinate and clear. If a seizure is made and condemnation is passed without the allegation of any specific cause of forfeiture or offence, and without any public notice of the proceedings, so that the parties in interest have no opportunity of appearing and making a defence, the sentence is not so much a judicial sentence, as an arbitrary sovereign edict. It has none of the elements of a judicial proceeding, and deserves not the respect of any foreign nation. It ought to have no intrinsic credit given to it, either for its justice or its truth, by any foreign tribunal. It amounts to little more in common sense and common honesty than the sentence of the tribunal, which first punishes, and then hears the party—Castigatque, auditque. It may be binding upon the subjects of that particular nation. But upon the eternal principles of justice it ought to have no binding obligation upon the rights or property of the subjects of other nations; for it tramples under foot all the doctrines of international law; and it is but a solemn fraud, if it is clothed with all the forms of a judicial proceeding. I hold, therefore, that if it does not appear upon the face of the record of the proceedings in rem, that some specific offence is charged, for which the forfeiture in rem is sought, and that due notice of the proceedings has been given, either personally, or by some public proclamation, or by some notification or monition, acting in rem, or attaching to the thing, so that the parties in interest may appear and make defence, and in point of fact the sentence of condemnation has passed upon ex parte statements without their appearence, it is not a judicial sentence, conclusive upon the rights of foreigners, or to be treated in the tribunals of foreign nations as importing verity in its statements or proofs.

The opinion of Lord Ellenborough in Buchanan v. Rucker. 9 East, 192, contains much doctrine applicable to cases of this sort, although that case was a proceeding in personam, against a person, who had never been within the jurisdiction. But the case of Sawyer v. Maine F. & M. Ins. Co., 12 Mass. 291, 295, is directly in point. The supreme court of Massachusetts there held, that as it did not appear that any libel was filed, any monition issued, any hearing had, or that any of the formalities had taken place which are necessary to give a conclusive operation to the decrees of foreign courts, the sentence in that case (by a court of admiralty) was not to be deemed conclusive, even if it were admitted to be any evidence at all. The court added, that for aught that appeared

from the copy of the proceedings, the forfeiture was decreed by mere arbitrary power, without any trial; and that some of the forms of justice, used in civilized countries, had been assumed without any regard to the substantial requisites of a judicial inquiry. I entirely agree to the doctrine here promulgated. If a civilized nation seeks to have the sentences of its own courts held of any validity elsewhere, they ought to have a just regard to the rights and usages of other civilized nations, and the principles of public and national law in the administration of justice. If they choose to proceed without any written charges of the offence, (for that is what I understand to have been meant by the supreme court of Massachusetts in using the word "libel" in the case above cited), without any monition in rem, or notice to the parties, or those, who represent them, without any hearing upon the facts, and without giving the party an opportunity to contest the charges, or to know, what in particular those charges are; it is but just, and conformable to the rights of other independent nations, to disregard such sentences, as mere mockeries, and as in no just sense judicial proceedings. Such sentences ought to be deemed, both ex directo in rem, and collaterally, to be mere arbitrary edicts, or substantial frauds.

Similar principles were recognised and maintained by the supreme court of the United States in The Mary, 9 Cranch [13 U. S.] 126, 142, 144. The court there said, that the reason, why the whole world are ordinarily held to be bound by the decree of a court of admiralty in rem, is, because every person, having any interest in it, may make himself a party and appeal from the decree. But the court added: "Notice of the controversy is necessary in order to become a party; and it is a principle of natural justice, of universal obligation, that before the rights of the individual be bound by a judicial sentence, he shall have notice express or implied of the proceedings against him. Where these proceedings are against the person, notice is served personally or by publication; where they are in rem, notice is served upon the thing itself. This is necessarily notice to all, who have an interest in the thing, and is reasonable, because it is necessary, and because it is the part of common prudence for all those, who have an interest in it, to guard that interest by persons, who are in a situation to protect it."

Let us now see how far these principles have any just application to the present case. In the first place, it is perfectly clear that the tribunals of Mexico, having jurisdiction in rem, had a complete jurisdiction in this case; for the schooner was at the time within the territorial districts of that government. In the next place, the jurisdiction of the particular court, being dependent upon the municipal law, and affirmed by the court itself, would seem to be conclusive upon

all foreign courts, especially as the record furnishes evidence that its decree in this very case was adopted by the government through its proper officials. In the next place, it is stated in the record that the master of the vessel was summoned (and he was the proper representative of the vessel in a proceeding in rem in the absence of the owner), and that he appeared, and was admitted to make defence before the court. So far there seems no difficulty in the case.

The real difficulty in the case is the total want of any libel, or allegation in the nature of a libel, containing specific charges of the offence for which the confiscation was sought. We do not know precisely whether the offence intended to be charged was a fraudulent importation of goods in the schooner contrary to law, or the want of some general manifests, the nature and objects of which were stated, or the want of a specific manifest of the two boxes of medicines, containing a full description of the particular contents of these two boxes. In this respect we are left to mere inference and conjecture. The only documents which contain any statements on the subject, to serve in the place of a libel, are a letter under date of the 18th of April, 1837, from the commissioner of the custom-house, addressed to the administrator of the custom-house in the department, in which the writer says: "I annex three particular manifests belonging to two boxes medicines (no copies of these manifests were put in the record), which arrived in the American schooner Gardiner, Captain E. B. Freeman, coming from New York in ballast, and consigned to Don Pedro Nuel Pailleb. The general manifests I do not send, on account of the said captain's alleging, that he is entirely ignorant of the contents of the said boxes, for which reason he makes none, although they have been repeatedly demanded of him in presence of the collector, and also of the commander of the line, that in case this defect is proved, it may not be said to be from want of notice, or from any bad faith on the part of the commissioner. I send you, therefore, the only documents he has delivered to me. The said boxes remain on board the said vessel under thirteen seals for security, until the administration determine, what shall be done with them; since there is no occasion for the vessel to proceed to the capital, the captain having written to the consignee to attend there, and see what is to be done in the business. I annex another document attested by the Mexican consul, that the vessel had been cleared with the customary formalities of the port, together·with a rate of the provisions, and a declaration of the said captain, but without a certificate of the measurement of said vessel, the captain of the port not having measured, which, however, shall be forwarded to you as soon as done. All which I make known to you, to serve as occasion may require." This is

the whole of the letter. It is a mere official letter addressed by one public officer to another. It contains a mere narrative of certain facts. It makes no charge whatever against the vessel, as being forfeited by any act or omission. It alludes to no seizure, and proceedings against the vessel. It is mere advice; and can in no just sense be deemed a libel, or document in the nature of a libel. It wants not merely the form of a judicial proceeding for a forfeiture, but its very essence. Looking at this letter alone, no person could ever conjecture, that the facts stated therein, authorized, if true, a forfeiture of the vessel, and were so charged in order to enforce the forfeiture. The next document is a letter addressed by the administrator of the custom-house to the district judge of the department, under date of the 21st of April, 1837, in which he says: "I have just received from the commissioner of the custom-house at the principal bar, a communication under date of the 18th instant (the foregoing letter), which I annex, respecting the want of general manifests, with which the American schooner Gardiner, Captain B. Freeman, coming from New York, has arrived at· that port, presuming that the other documents, which he has brought, and which I have before me, are in due form of law. All which I communicate to you, that you may determine what seems to you fit of right." This is the whole letter. It contains no accusation, asserts no offence chargeable upon the vessel, and asks no forfeiture. These are the only papers upon which the district judge proceeded to summon the captain to appear before him to defend his rights. I think it would violate all notions of the administration of public justice to call them a libel, or an allegation in the nature of a libel, or an accusation on which to found a decree of forfeiture against the vessel.

The record then goes on to state the summons and appearance of the captain and the proceedings before the judge as follows: "In virtue of the foregoing order, appeared at the appointed hour before this tribunal, the administrator of the custom-house, attorney general, and the captain of the American schooner Gardiner, to attend the hearing thereby ordered; and the present proceedings being read, and the judge having explained the object of this hearing, which was made known to the said captain through his interpreter, Don Andreas Mandilas, the said captain represented, that on his arrival at Frontera, he delivered to the commissioner of this custom-house, Don Juan Rosalind Vega, three particular invoices, a note of the provisions of his vessel, and a clearance of the custom-house of the port whence he sailed, but did not deliver the general manifests, not having brought them on account of being ignorant of the contents of the two boxes he had on board. And the said documents having been exhibited to him for rec-

ognition, he said they were the same he had mentioned. The administrator and attorney general represented, that the captain, being convicted by his own confession of having brought the aforementioned boxes, without the requisite manifest, conformable to the laws relating to the matter, they demanded, that the penalty be imposed upon him, which those laws prescribed for those, who do not submit to them; and which being heard by the judge, he said, that in conformity to the demands of the aforesaid functionaries, and to what is prescribed in article 7th of the law of November 16, 1827, and the decree of March 31, 1821, he must and did declare subject to the penalty of confiscation the American schooner Gardiner, with all her appurtenances, ordering in consequence, that the said schooner be brought to this capital, where, after appraisement notice to the supreme government, agreeably to the final disposal in such case, communicated under date of May 7, they should proceed to a sale at public auction, provided no appeal be interposed within the legal term to prevent. Whereupon the session was concluded, the present being signed by all in presence of the judge and notary, which I certify." It farther appears by the record, that the captain refused to sign the foregoing sentence, declaring, that he would not condemn himself. No appeal was interposed; and the execution of the sentence was subsequently directed to be carried into effect.

Now, certainly, the sentence does purport on its face to decree a confiscation of the schooner, and to be pronounced in conformity to what is prescribed in certain municipal laws of the government referred to by their dates. But these laws are not set forth in haec verba, so that we are utterly ignorant of their contents. What the particular facts or grounds of the confiscation were, is not stated by the judge in the sentence, although certain facts and grounds are stated in the demand of confiscation made in the representation (apparently oral) of the attorney general and the public administrator, viz. that the two boxes were by the confession of the captain brought into port without the requisite manifests, and therefore were subject to the penalty prescribed by the laws; and hence it may be inferred, arguendo, that the judge adopted their statements, and pronounced his sentence upon that foundation. But it is not so said. And I do not understand, that in construing a foreign sentence, which is to be held conclusive in rem, as to the facts and grounds of the sentence stated therein, this court is bound to make out such facts and grounds by argument, and inference, and conjecture. The facts and grounds ought to appear ex directo, in order to estop the parties in interest from denying or questioning them. I agree with the doctrine of Lord Ellenborough in Fisher v. Ogle, 1

Camp. 418, that courts of justice are not bound to fish out a meaning, when sentences of this sort are produced before them. Whatever points the sentence professes ex directo to decide, they are bound to respect, and admit to be conclusive. But if the sentence be ambiguous or indeterminate as to the facts on which it proceeds, or as to the direct grounds of condemnation, the sentence ought not to be held conclusive; or the courts of other countries put to the task of picking out the threads of argument, or of reasoning or of recital, in order to weave them together, so as to give force or consistency or validity to the sentence. The doctrine in Calvert v. Bovill, 7 Term R. 523, and Christie v. Secretan, 8 Term R. 192, seems to me on this point entirely correct and satisfactory. In Maley v. Shattuck, 3 Cranch [7 U. S.] 458, 488, it was said by Mr. Chief Justice Marshall, in delivering the opinion of the court, that the sentence of a foreign court of admiralty has never been supposed to evidence more than its own correctness; and consequently has never been supposed to establish any particular fact, without which the sentence may have been rightly pronounced. The same rule applies to the decrees of municipal courts, where the decree is general, and does not profess to proceed ex directo on any particular facts stated in the decree.

On the whole, therefore, for the reasons already stated, I strongly incline to hold, that for the want of some suitable allegation of the offence, in the nature of a libel, and for the want of any statement of facts ex directo, upon which the present sentence professes to be founded, it is not conclusive evidence against the plaintiffs in the present suit. But it does not appear to me necessary to rest the decision in the present case wholly on this ground. There is a clause in the policy, that "the insurers shall not be answerable for any charge, damage, or loss, which may arise in consequence of seizure or detention for or on account of illicit or prohibited trade, or trade in articles contraband of war." The question of the true interpretation of this clause came before the supreme court of the United States in the case of Carrington v. Merchants' Ins. Co., 8 Pet. [33 U. S.] 496, 516, 517, 518. It was there held, that to bring a case within the clause, as an exception to the liability of the insurers, it is not necessary, that there should be a legal or justifiable cause of condemnation; but that it is sufficient, that there is a legal or justifiable cause of seizure and detention for or on account of a supposed illicit or prohibited trade. If, therefore, there was a seizure or detention bona fide made upon a reasonable ground, such, for example, as if there was a well founded suspicion of such illicit or prohibited trade, or probable cause to impute or to justify further proceedings and inquiries, that would be a legal and justifiable cause of seizure and detention within

the purview of the clause. On the other hand, if there was a mere lawless seizure or detention under the pretext of illicit or prohibited trade, and it was utterly unfounded, and without any reasonable cause of suspicion, and was used merely as a pretence to cover an intentional fraud or tort, then the seizure or detention was not such as is contemplated in the clause.

That there was a seizure in this case admits of no doubt; for there was a proceeding in rem, whether regular or irregular is of no consequence, and a confiscation adjudged in rem. The property was within the territory, in the possession and under the control of the government officers. Physical force actually applied is not indispensable to constitute a seizure or detention. It is sufficient, if the property be potentially within the reach, and subject to the process of the government. Thus, an embargo laid on vessels in a port is not less real, as an arrest, seizure, or detention, because it is unaccompanied with a physical force put on board to prevent a departure from the port. The restraint may be, and is, just as operative, if there is a moral force, and power of immediate action, which subdues resistance. There is a complete subjection or deditio to the local sovereignty, when it has the means and capacity and will immediately at hand to enforce obedience to its orders.

The seizure and detention were also, as it appears to me, clearly and avowedly made for and on account of a supposed illicit or prohibited trade; that is to say, a trade carried on, or attempted to be carried on, without the proper documents or manifests required by law. No other cause is assigned or pretended. I do not say, that there was any just ground of condemnation. It is sufficient, if there was a just and reasonable ground for the proceedings on account of the supposed illicit or prohibited trade. The only question, then, open for consideration, is, whether the accusation of the asserted illicit or prohibited trade were a mere cover and fraudulent pretence for a wanton trespass and aggravated wrong in known violation of law and right, or was bona fide made, however unfounded in fact. If the latter, the insurers are exonerated; if the former, then they are liable for the loss. In short, the question comes to this, whether the whole proceedings were knowingly and intentionally fraudulent, without any reasonable suspicions to justify them. If the condemnation was without any hearing, or opportunity of hearing, on the part of the captain, before the court, every presumption of mala fides must be materially strengthened.

It appears to me, that the question of fraud, or not, is completely open as a matter of fact for the consideration of a jury under all the circumstances of this extraordinary case. Before that question can be properly disposed of, it will probably be found necessary, in addition to other evidence, to have the Mexican laws, on which the condemnation is supposed to have been founded, before the court, so that the point of probable cause of seizure for defect of the proper manifests may be more fully presented, in explanation of the res gestae, to repel or confirm the suggestion of fraud. Trial by jury ordered.