# Supreme Court of Texas

No. 24-0581

Shamrock Enterprises, LLC d/b/a FRSTeam Gulfcoast/LA,

*Petitioner*,

v.

Top Notch Movers, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

CHIEF JUSTICE BLACKLOCK, joined by Justice Lehrmann, Justice Busby, Justice Young, and Justice Sullivan, concurring.

I agree with the Court that this record does not show strict compliance with the applicable service statute and that default judgment was therefore improper. I write separately because even if the statute had been followed, our Constitutions would still require more.

The law's deep skepticism of default judgments is no mere rule of procedure. It is a "principle of natural justice which requires a person to have notice of a suit before he can be conclusively bound by its result." *Lafayette Ins. v. French*, 59 U.S. (18 How.) 404, 406 (1856). Indeed, "[i]t is a dictate of natural justice, as well as a general principle of law, that

every person to be directly affected in his interest or rights by the judgment of a court of record is entitled to be named or described in the suit, to have notice of it, and an opportunity of being heard in defense of his rights." *Summerlin v. Reeves*, 29 Tex. 85, 88 (1867).

To "bind a defendant personally by a judgment, when he was never personally summoned, nor had notice of the proceedings," is "contrary to the first principles of justice." *Harris v. Hardeman*, 55 U.S. (14 How.) 334, 340 (1853) (quoting *Borden v. Fitch*, 15 Johns. 121, 133–34 (N.Y. Sup. Ct. 1818)). If judgment is thus rendered "without any public notice of the proceedings, so that the parties in interest have no opportunity of appearing and making a defence, the sentence is not so much a judicial sentence as an arbitrary sovereign edict." *Windsor v. McVeigh*, 93 U.S. 274, 280 (1876) (quoting *Bradstreet v. Neptune Ins.*, 3 F. Cas. 1184, 1187 (C.C.D. Mass. 1839) (No. 1,793)).

For this reason, under both the United States and Texas Constitutions, a "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314 (1950). In other words, "when notice is a person's due, process which is a mere gesture is not due process." *Id.* at 315. Rather, the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* Attempts to put the other party on notice of a lawsuit must therefore reflect the efforts of someone who "*wanted* to do it, not merely *had* to do it." *Tex. State*

*Univ. v. Tanner*, 689 S.W.3d 292, 299 (Tex. 2024); *see also In re E.R.*, 385 S.W.3d 552, 565 (Tex. 2012) (holding that efforts to give notice "must include inquiries that someone who really wants to find the defendant would make").

* * *

In December 2021, before filing suit, Top Notch sent a demand letter to "Shamrock Enterprises Inc. dba FRSTeam Of Gulfcoast/LA" at an address in Summerdale, Alabama. It appears that when Top Notch wanted to avoid litigation and simply get paid, it used the Summerdale address. Two months later, when Top Notch sued Shamrock, it alleged a different address in Foley, Alabama. Top Notch also attached invoices reflecting its transactions with Shamrock. Those invoices listed an address in Kenner, Louisiana—where most deliveries occurred—as well as a phone number and e-mail.

Because Shamrock, an Alabama company, had no registered agent in Texas, Top Notch requested substituted service through the Secretary of State at the Foley address it provided. The Secretary of State received the citation on February 22, 2022, forwarded it by certified mail to the Foley address on February 28, and later issued a certificate stating that the mailing was returned "[b]earing the notation Return to Sender, Vacant, Unable to Forward." This certificate was filed in the trial court on April 19, 2022.

Despite the evidence that its lone attempt at service had failed, the record shows no further effort by Top Notch to notify Shamrock before seeking a default judgment on May 2. The record does not reflect that Top Notch sent any further communication to the Summerdale

3

address used in its demand letter or to the address in Louisiana listed on its invoices. The record also does not show that Top Notch tried the phone number on those invoices or used the listed e-mail address in an attempt to either provide notice or figure out where Shamrock could be served or notified. In sum, nothing in this record indicates that Top Notch acted like someone who "*wanted*" to give Shamrock notice of this lawsuit, *Tanner*, 689 S.W.3d at 299, or was "desirous of actually informing" Shamrock that its rights were at stake, *Mullane*, 339 U.S. at 315.

As the United States Supreme Court explained in *Jones v. Flowers*, "a person who actually desired to inform" another party of an action would not simply "do nothing when a certified letter . . . is returned unclaimed." 547 U.S. 220, 229 (2006). This holding was not novel. Indeed, "most" circuit courts and state supreme courts had held that when mailed notice is returned undelivered, due process requires additional reasonable steps. *Id.* at 227–28 (collecting cases); *see also Plemons v. Gale*, 396 F.3d 569, 575 (4th Cir. 2005) ("Most courts have reached precisely this conclusion. In case after case they have held that the reasonable diligence standard requires a party charged with notice to follow up when a mailing has been returned as unclaimed or undeliverable." (footnote omitted)). Texas courts have reached similar conclusions in cases involving notice letters returned unclaimed. *See, e.g.*, *Barnes v. Frost Nat'l Bank*, 840 S.W.2d 747, 750 (Tex. App.—San Antonio 1992, no writ) ("An unclaimed letter from the Secretary of State's office can hardly further the aim and objective of the long-arm statute, which is to provide reasonable notice of the suit and an

4

opportunity to be heard."); *Orgoo, Inc. v. Rackspace US, Inc.*, 341 S.W.3d 34, 42 (Tex. App.—San Antonio 2011, no pet.).

*Jones* rejected the idea that a party charged with achieving notice is absolved of responsibility for the failure of notice simply because the other party bears some responsibility himself. The Court noted that, even if Jones had a statutory duty to keep his address current and bore some responsibility for the missed notices, a "party's ability to take steps to safeguard its own interests" does not relieve the party charged with notice "of its constitutional obligation." 547 U.S. at 232 (citation modified). In identifying what "additional reasonable steps" might look like, *id.* at 225, the Court stressed that due process demands neither exhaustive searches nor heroic measures. It pointed to simple, low-burden options—resending by regular mail, posting notice on the door, or addressing the mail to "occupant"—all easy steps that "one desirous of actually informing" the owner might reasonably try. *Id.* at 235–36. Another simple option, surely one that a plaintiff desirous of achieving actual notice of a lawsuit would try, is to deliver the suit to alternate addresses for the defendant that are known to the plaintiff.

The record contains no indication that Top Notch made any such effort despite having multiple alternative addresses for Shamrock in its own files, as well as phone numbers and e-mail addresses. Top Notch knew that its sole attempt at service had failed because the certified mailing to the Foley address came back "Return to Sender, Vacant, Unable to Forward." Yet despite having several different alternative ways to reach Shamrock, Top Notch took no further action. Even if that

5

is what the service statute at issue might seem to permit in some cases,[1] that is not what our Constitutions permit.

* * *

As a matter of both basic fairness and basic constitutional law, any court asked to render a default judgment should require the plaintiff to explain the steps it took to actually notify the defendant after learning that its initial efforts failed. Irrespective of any statutes or procedural rules about service of process, a party who can take further reasonable, low-cost steps to provide actual notice of a lawsuit but does not do so should never be permitted to obtain a default judgment in a Texas court. That principle is already implicit in this Court's precedents. We should make it explicit in a future case. Because reaching the constitutional question was unnecessary in this case, I join the Court's opinion and judgment.

---

[1] Interpreting an earlier version of the service provision at issue here, the First Court of Appeals remarked that "[t]he consequence of the appellee's actions is that a party to a lawsuit has the complete and absolute right to ignore information it has concerning the proper address of the office of the registered agent and then deny that party its day in court by obtaining a no-notice default judgment." *Harold-Elliott Co. v. K.P./Miller Realty Growth Fund I*, 853 S.W.2d 752, 755 (Tex. App.—Houston [1st Dist.] 1993, no writ). Even so, the court reluctantly "agree[d] that the appellee complied with the literal interpretation of the statute." *Id.* The Fourteenth Court reached a similar conclusion under the current statute: "[A] diligent party may rely on the registered address a corporation has placed on file with the Secretary of State, even when the party knows that the address is no longer correct." *Autodynamics Inc. v. Vervoort*, No. 14-10-00021-CV, 2011 WL 1260077, at *6 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.). It appears, however, that neither court was urged to consider whether our Constitutions might compel a different reading of the statute or a different result despite the statute.

_____

James D. Blacklock
Chief Justice

**OPINION FILED:** January 16, 2025