THE CITY OF UTICA, Plaintiff, v. CARMELA PROITE, Defendant.*

Supreme Court, Special Term, Oneida County, October 3, 1941.

* Affd., 288 N. Y. 477.

*Bartle Gorman, Corporation Counsel,* for the plaintiff.

*J. Walter Augar,* for the defendant.

MOREHOUSE, J. The city of Utica has taken title to a large number of properties under the provisions of title 3 of article VII-A of the Tax Law. This so-called friendly action has been instituted as a test of the validity of the plaintiff's title and to obtain a judicial pronouncement with respect thereto. The defendant executed a contract for the purchase of one of the parcels of real estate so acquired by the plaintiff, and under its terms, the plaintiff tendered a deed and demanded payment of the balance of the purchase price. The defendant refused to accept the conveyance and to pay the balance upon the ground that the statute under which the plaintiff acquired the property is invalid, illegal and unconstitutional in that it seeks to deprive the record owners of their property without due process of law.

The statute in question provides that tax liens, which have remained due and unpaid for a period of not less than four years from the date upon which they became a lien, shall be summarily foreclosed. The procedure outlined is to file within three months after the date of the adoption of a resolution by the governing body of the tax district electing to adopt title 3, and on the first day of May in each year thereafter, in the office of the county clerk of the county in which the property is situated, a list of all parcels which on that date have unpaid tax liens owned by the tax district and which have remained unpaid for a period of at least four years. The parcels shall be numbered serially and a certified copy of the list must be filed in the office of the city treasurer, in the corporation counsel's office, and in the office of the county treasurer of the county of Oneida. The list shall contain a brief description of the property, the name of the last known owner as it appears on the assessment roll for the year preceding that in which the list is filed, together with a statement of each tax lien due and unpaid, with the dates from which the liens are unpaid and the rate at which interest and penalties are computed. It shall be verified by the city treasurer, and the filing of such list in the office of the county clerk has the same force and effect as the filing and recording in said office of an individual and separate *lis pendens,* and as the filing in the Oneida County Court, which is given jurisdiction of the action, of an individual and separate complaint by the city of Utica against the property described in the list, to enforce the payment of delinquent taxes, assessments or other lawful charges against the property. The county clerk is directed to index such list in a separate book under the name of

the City of Utica. The proceeding is *in rem*, and no personal judgment shall be entered for the tax liens or other charges.

In addition to the foregoing requirements, the statute provides that the city treasurer cause a notice of foreclosure to be published in two Utica newspapers once a week for six successive weeks, and also to post a copy of such notice in his office, in the Oneida County Court House and in three other conspicuous places within the city of Utica, and cause a copy of the same to be mailed to the last known address of each owner of the property affected as the same appears upon the city treasurer's records. A statement, as provided by section 165-b of the Tax Law, shall accompany the notice of foreclosure addressed to the owner. There is no provision for personal service of either notice upon the property owner, and if the name and address of the record owner does not appear upon the city treasurer's records, the latter shall so state in an affidavit to be filed in the office of the county clerk.

Section 165-c of the Tax Law provides that any owner, mortgagee, or lienor may file a statement with the city treasurer giving his name, residence and post office address, with a description of the parcel in which he has an interest, which shall continue in effect for five years, and upon the filing thereof the city treasurer shall mail to each such person a copy of each notice required under title 3, but the failure of the city treasurer so to do shall not affect the validity of the title to any property acquired in this manner.

Subdivision (2) of section 165-a provides that any person having a right, title, or interest in, or lien upon any parcel described in such list, may redeem before the expiration of the redemption period specified, or may serve a verified answer upon the attorney for the tax district setting forth in detail the nature and amount of his interest, and any defense or objections to the foreclosure of the tax lien. The period for redemption is seven weeks from the date of the first publication of the notice, and such answer must be filed within twenty days after the last day for redemption.

Section 165-g establishes a presumption of the validity of the various steps for the assessment and levy of the taxes, and places upon a defendant the burden of affirmatively establishing any jurisdictional defect or invalidity. This section further directs that the proceedings taken shall be valid and effective with respect to infants, incompetents, absentees or nonresidents.

The defendant contends that this method of foreclosing tax liens does not result in the acquisition of a valid title by the purchaser. She maintains that it is in violation of sections 1 and 6 of article I of the Constitution of the State of New York and section 1 of the Fourteenth Amendment of the Constitution of the United

States in that it takes property without " due process of law." She alleges that the manner of giving notice is inadequate, and points out that the method under which the foreclosure is accomplished is without personal service of any process upon the owner or the holder of a lien against the property; that there is no provision for the mailing of a notice to the correct address of the owner, and in some instances the mailing of any notice is not required. She attacks the failure to require the posting of a notice upon the premises involved, and insists that there is no protection of the rights of infants and incompetents, and that mortgagees and lienors are not entitled to any notice unless they have taken affirmative action by filing the prescribed statement of their interests, and that even under such circumstances failure to mail a notice to such persons does not, under the statute, affect the validity of the proceedings.

Effective enforcement of tax obligations is vital to all communities. Without it, there could be no stability of governmental finances. Property owners and lawyers have long been perplexed concerning titles to real estate acquired through sales for unpaid taxes. The Legislature has endeavored to clarify and strengthen the statutes which confer upon tax districts the right to sell real estate for unpaid tax levies. In this endeavor the courts have, in recent years, upheld such legislation whenever consistent with constitutional provisions. Every property owner is necessarily chargeable with knowledge that his real estate is subject to the payment of taxes, and that he may forfeit his right to ownership and possession if he unreasonably neglects to make payment. Proceedings which might fail to constitute " due process of law " under circumstances where no liability was anticipated, might well be effective and binding in the case of a known and recognized liability. This question was properly and sensibly approached in *City of Buffalo* v. *Hawks* (226 App. Div. 480; affd., 251 N. Y. 588). The constitutionality of the charter of the city of Buffalo in regard to the manner of the service of the summons in an action for the foreclosure of tax liens was therein upheld. In writing the prevailing opinion, Justice EDGCOMB said " The guaranty of the Constitution was never intended to perpetuate any particular method of bringing a party into court. So long as his substantial rights are preserved, the Legislature may make much changes in the manner of the service of the process of the courts as it deems proper. * * * It has repeatedly been held that the right to take property under the taxing power of the State or the power of eminent domain is a matter of legislative regulation and direction, and that in such a proceeding a notice, even if it be constructive and indirect, is

sufficient to escape the criticism that it is violative of the ' due process ' clause of the Constitution, if the manner of giving it is reasonably adapted to the nature of the case and its subject-matter, and if it gives to the property owner a reasonable opportunity to protect his lands from an arbitrary or unjust confiscation. * * * The duty rests upon the owner to keep himself informed concerning his real property. If he fails so to do, and notice affecting his lands, given by such publication as is usually required in like cases, fails to reach him, it is his misfortune, and he must suffer the consequences. The public is charged with knowledge of the provisions of all statutes, and is required to take notice of the procedure therein specified."

Judge SEARS, then Presiding Justice of the Fourth Department of the Appellate Division, concurring with Justice EDGCOMB, said " In its essence the action is one to enforce the payment of taxes, and the State in authorizing such action has acted in exercise of its sovereign power to raise revenue essential to carry on the affairs of state and the due administration of the laws. * * * In processes of taxation the same stringent requirements for notice are not necessary as in ordinary judicial proceedings. * * * A landowner is treated as having knowledge of the statutory provisions relating to taxation including those in respect to notices to be given to landowners."

Under the principles enunciated in *City of Buffalo* v. *Hawks* (*supra*) applied to the instant case, and upon the further ground that the procedure adopted by the plaintiff was calculated to afford reasonable notice to the property owner with a likelihood of actual notice, it must be determined that the plaintiff has acquired a valid title to the real property in question, and it is accordingly entitled to the relief demanded in the complaint.