In the Matter of the Accounting of SECURITY TRUST COMPANY OF ROCHESTER, as Trustee of its Discretionary Security Trust Fund " A ".

Surrogate's Court, Monroe County, April 30, 1947.

*Daniel M. Beach, Charles S: Wilcox* and *Thomas M. Nichols* for Security Trust Company of Rochester, as trustee, petitioner.

*Joseph M. Feely,* special guardian for parties interested in the income of the common trust fund, appearing specially.

*James C. O'Brien,* special guardian for parties interested in the principal of the common trust fund, appearing specially.

*Leo P. Dorsey, Richard. S. Emmet, Peter Keber, Albert B. Maginnes, William Curtis Pierce, James N. Vaughan* and *Henry M. Wise* for New York State Bankers' Association, *amicus curiæ.*

WITMER, S.   Under the authority contained in section 100-c of the Banking Law of the State of New York, on June 21, 1945, petitioner established its "Discretionary Security Trust Fund ' A ' '", herein referred to as the "trust fund", and proceeded to place therein funds aggregating nearly one and a half millions of dollars from various trusts (between eighty and ninety in all, over half of which are *inter vivos*, the rest testamentary), of which it was trustee.   In September, 1946, at the end of the initial fifteen months' period specified in said statute, petitioner filed its accounts herein in respect of its operation of its said trust fund to that date, and petitioned for its judicial settlement.   Pursuant to said section 100-c, subdivision 12, of the Banking Law, notice "addressed generally without naming them to all parties interested" in such trust fund and the participating trusts was given by publication thereof once a week for four successive weeks in the *Daily Record*, Rochester, New York.   Also, pursuant to said section, upon the filing of said petition and accounts, the court named a special guardian and attorney to appear for and act in behalf of infants, incompetents and all other parties "known or unknown" not otherwise appearing, having any interest in the income of such trust fund, and another special guardian and attorney .to appear for and act in behalf of infants, incompetents and all other parties "known or unknown" not other-

wise appearing, having any interest in the principal of such trust fund. On the return day the special guardians qualified, and appeared specially to object to the jurisdiction of the court in this proceeding. Except for the attorneys for the petitioner, no one else appeared at that time.

The objections raised to the court's jurisdiction were two-fold: First, that the petitioner had commingled in the trust fund moneys from *inter vivos* trusts with moneys from testamentary trusts, and that since this court has no jurisdiction over *inter vivos* trusts, it cannot render a valid decree herein; second, that the provisions contained in said statute (Banking Law, § 100-c) for notice of application for judicial settlement are insufficient to meet the requirements of " due process of law " under both the Federal and State Constitutions (U. S. Const., 14th Amendt., § 1; N. Y. Const., art. I, § 6), and that the notice given was inadequate to confer jurisdiction herein upon the court. Upon the filing of such objections application was made by the New York State Bankers' Association for permission to appear herein as *amicus curiæ*, and the same was granted. Some testimony was presented concerning the creation and operation of the common trust fund in question. At the request of the special guardians their right to make objections upon the merits was expressly reserved to them until after the preliminary determination of the objections to jurisdiction shall have been made.

The court's attention has been invited to the fact that four other such common trust funds have been created under the said statute, as amended in 1943 (L. 1943, ch. 602) to authorize a discretionary common trust fund (§ 100-c, subd. 3), that they were all established by trust companies in the city of New York, and that their initial accounts have been filed and approved. Opinions were written in at least two of such matters (*Matter of Bank of New York,* 189 Misc. 459, and *Matter of Continental Bank and Trust Co. of N. Y.,* 189 Misc. 795 but the objections here made apparently were not raised therein. In *Matter of Bank of New York* (*supra*) mention was made of participating *inter vivos* trusts. In *Matter of Continental Bank & Trust Co. of N. Y.* (*supra*) the court declined to insert in the decree a clause to the effect that it was not binding upon those not notified. Jurisdiction was assumed in both of the cited cases, but it does not appear that arguments were there made and briefed on the questions of jurisdiction raised herein, and those cases are not considered as authorities on the ques-

tions now before us. Since the right to raise objections later upon the merits has been granted to the special guardians herein, it is premature for this court to comment upon the foregoing decisions; but it is deemed not inappropriate at this time to state that this court is in accord with many of the conclusions reached therein.

It is also appropriate to state at the outset that this court is impressed with the fact that there is a definite need and place for common trust funds and that they may be valid practical vehicles for the investment of trust funds under proper legislation. At the same time, the advantages of such a fund must not cause us to lose sight of its limitation. It is a medium for the participation of small estates in many and varied investments, giving such investments a broader and presumably on the average a firmer foundation. Still it must not be overlooked that this common trust fund is subject to general economic trends, and is affected to some extent in the same way by such trends as are individual investments. A participating trust, moneys of which are invested in the common trust fund during a general high-level economic period, may have its participation withdrawn during a low-level period, and thus realize a substantial loss. The time for withdrawal may not be subject to control. It is impossible, through the common trust fund medium alone, to effect a complete averaging of economic contingencies or to insure against loss. What may be the result with reference to a particular participating trust depends to a considerable extent, of course, upon the acts of the common trustee; and as in all such situations in the law, the beneficiaries must be afforded a proper opportunity to scrutinize the conduct of the fiduciary and have made to them a proper judicial accounting of all its acts as such trustee.

The effect of the investment by the petitioner in the trust fund of funds from *inter vivos* trusts will first be considered. It is elemental that the Surrogates' Courts are courts of limited jurisdiction and have only such jurisdiction as is expressly granted to them by statute. (*Isaacs* v. *Isaacs,* 208 App. Div. 61; *Matter of Geller,* 167 Misc. 578.) There is no doubt that the Legislature has the right to grant to Surrogates' Courts jurisdiction over *inter vivos* trusts if it wishes. The term " *inter vivos* trusts " is not expressly used in the statute under consideration (Banking Law, § 100-c); but investments in the common trust fund are authorized from trusts described therein so as to include *inter vivos* trusts (see subds. 1, 11, 16), and

reference is made to " personal or testamentary trustee " and to funds held " in any fiduciary capacity ". Moreover, the same subdivisions authorize investment in the common trust fund of moneys of an incompetent held by the trust company as committee, and of moneys " of any other fund " (subd. 11), besides funds of a decedent, trust, or infant. The section requires a trust company which has established a common trust fund to " file an account of its proceedings in respect thereof either in the office of the clerk of the supreme court in the county in which such trust company maintains its principal office or in the office of the surrogate of such county    *    *    *." (Subd. 10.) At the time of the original enactment of said section in 1937 (L. 1937, ch. 687), section 40 of the Surrogate's Court Act relating to the general jurisdiction of the court was amended by adding thereto subdivision 10, which provides as follows: " 10. To settle, as provided in the banking law, the account by a corporate fiduciary of its proceedings in respect of a common trust fund maintained by it pursuant to such law."

It is urged on behalf of petitioner that the two said enactments clearly empower this court to entertain the present application. The argument is plausible, but an examination of the background of the subject of the jurisdiction of the Surrogates' Courts with respect to *inter vivos* trusts leads to a denial of jurisdiction herein.

In 1935, two years prior to the original enactment of section 100-c of the Banking Law, the Court of Appeals in *Matter of Lyon* (266 N. Y. 219) held that a surrogate has no jurisdiction over property in an *inter vivos* trust merely because the parties and property were in his county and he had jurisdiction of the will of the deceased trustee of such *inter vivos* trust. The court held, page 223, that they were the " affairs of a trust *inter vivos* " and not of a decedent. That decision is controlling and precludes this court from assuming jurisdiction herein, unless it can be held that the legislation subsequently enacted enlarged the court's jurisdiction to include *inter vivos* trusts. Considering the legislation in the light of such decision, this court cannot assume that the Legislature intended to change the law as there declared, unless it clearly so appears.

Generally speaking the Surrogate has jurisdiction only over assets of persons dying resident within his county. (Surrogate's Ct. Act, § 45.) By said section he is also given jurisdiction (1) over the personal property of a nonresident decedent (a) who *dies within his county* leaving such property

within the State, or (b) who dies without the State leaving *personal property within that county* and no other, and (2) over the *real property within his county* of a nonresident decedent where no petition for the probate of the will of such decedent or for letters of administration has been filed in any Surrogate's Court. Likewise, generally speaking, the jurisdiction of the Surrogate over a testamentary trust is subject to the same territorial limitation, except as it has been expressly enlarged by statute. (See Surrogate's Ct. Act, §§ 171, 257.) Accordingly, the Surrogates' Courts would have no jurisdiction over a common trust fund which embodied exclusively funds of testamentary trusts created under wills probated respectively in diverse counties, States and foreign countries, except for subdivision 10 of section 40 of the Surrogate's Court Act, above quoted, and subdivision 10 of section 100-c of the Banking Law. The amendment thus made the operation of common trust funds more practicable by permitting a trust company which is trustee of many trusts created under wills probated respectively in various counties, States and countries, to commingle the funds thereof in a common trust fund for investment purposes, and by granting jurisdiction thereof unto the surrogate of the county in which such trust company has its principal office. The place of the principal office of the trust company thus became the only determining factor as to territorial jurisdiction. Subdivision 10 of section 40 of the Surrogate's Court Act clearly had the foregoing purpose and effect. Did it also confer jurisdiction upon the Surrogates' Courts over *inter vivos* trusts with respect to investments made therefrom in common trust funds pursuant to section 100-c of the Banking Law? I think not.

Without doubt there are good reasons why this court should be given jurisdiction over common trust funds although they contain *inter vivos* trust funds as well as other funds not " relating to the affairs of decedents ". (Surrogate's Ct. Act, § 40.) And it may be conceded that such reasons are so strong that this court should go as far as it can to construe the applicable statutes as granting such jurisdiction. In this connection this court is not unmindful of the concept of the nature of the common trust fund as stated in *Matter of Bank of New York* (189 Misc. 459, *supra*) and the court's opinion therein stated that we are only concerned with the common fund as an entity without regard to its origin. That is undoubtedly true as respects the right of the trustee to invest in the com-

mon trust the funds of the participating trusts, because the decree requested herein would not preclude the beneficiaries of the participating trusts from raising that question later. But in respect of other rights of such beneficiaries the decree would be conclusive (Banking Law, § 100-c, subd. 14); for example, as to the propriety of the investments made with the common trust funds, as to computations generally, as to the determinations of the value of the assets in the fund and of the participating units from time to time, as to the good faith of the trustee in its evaluations and in making or withdrawing an investment in the fund in behalf of a participating trust at any particular time, and as to many other questions which might be raised in behalf of the beneficiaries of the *inter vivos* trusts as well as of the other trusts. Accordingly, the court is undertaking to adjudicate not merely with respect to a new entity, the common trust fund, but also with respect to the rights therein of the beneficiaries of the participating *inter vivos* trusts. There is no authority for this court to pass on such matters, unless it is to be implied from the above-described statutes.

The Banking Law (§ 100-c, subd. 10) requires the trustee to proceed in either the Supreme Court or the Surrogate's Court. It being well-established law that the Surrogate's Court has no jurisdiction over *inter vivos* trusts, it may be presumed that the Legislature left it to the trust companies to determine in which court they would proceed, according to the nature of the funds which they invested in the common trust. If the petitioner had created one common trust fund in which to invest only funds of testamentary trusts and of infants, and were here accounting therefor, it would be in the proper court. Having elected also to invest *inter vivos* trust funds in the common trust, it must account in the Supreme Court, under the existing state of the law. Subdivision 10 of section 40 of the Surrogate's Court Act does not help the petitioner. As noted above, a valid reason for its addition to the statute is found in the necessity for enlarging the territorial jurisdiction of this court in respect of testamentary trusts. Said addition to the statute, by reference to subdivision 10 of section 100-c of the Banking Law necessarily enlarges the court's jurisdiction to include all testamentary trusts of which petitioner is trustee, without regard to the situs of such trusts, the principal office of the trustee instead of the situs of the respective trusts being the factor for determining jurisdiction. That is the

unequivocal mandate of the two sections. But since the nature of the funds to be invested in the common fund is left to the discretion of the trustee, there is no necessary conclusion that the Legislature also intended to confer upon the Surrogate's Court jurisdiction over *inter vivos* trust investments in such common trust fund. The contrary is true, because it would have been unnecessary for the Legislature to mention therein the Supreme Court, if it had intended to enlarge the jurisdiction of the Surrogates' Courts as to the subject matter. This construction of the amendment is reasonable and cannot be said to limit the intention of the Legislature or to emasculate the enactment. In view of the fact that this is a court of limited jurisdiction and in view of the decision of the Court of Appeals in *Matter of Lyon* (266 N. Y. 219, *supra*), it cannot be held that the jurisdiction of the court has been enlarged by implication to include *inter vivos* trusts. (*City Real Estate Co.* v. *Realty Construction Corp.*, 167 Misc. 379; *Bayonne Textile Corp.* v. *American Federation of Silk Workers*, 116 N. J. Eq. 146, Note, 92 A. L. R. 1450, 1457; *Grasso* v. *Cannon Ball Motor Freight Lines*, 125 Tex. 154; and see *County Securities, Inc.*, v. *Seacord*, 278 N. Y. 34, 37, and *Matter of Wood*, 187 Misc. 972, 977.) This is particularly true where, as here, other good reason existed for the enactment, namely, to change the territorial limitation. It is only by an implication which, at best, is subject to argument and doubt that said statutes may be said to enlarge the subject matter of the court's jurisdiction to include *inter vivos* trusts. Under such circumstances the implication cannot be made. (See *Matter of Electrolux Corporation*, 286 N. Y. 390, 397.) The court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intentionally omitted. (59 C. J., Statutes, § 576.) It would seem further that there is an analogy between implying jurisdiction from an ambiguous statute and implying a gift from ambiguous language in a will; and the well-established rule in the latter case should apply in the former. This rule was stated in *Matter of Kearney* (258 App. Div. 39, 41) as follows: "To infer a gift from the context of a will and the surrounding circumstances the probability of such intent must preclude any other reasonable inference. This rule has been stated as follows: 'To uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference.' (*Bradhurst* v. *Field*, 135 N. Y.

564.) ' To devise an estate by implication, there must be such a strong probability of an intention to give one, that the contrary cannot be supposed.' (*Post* v. *Hover*, 33 N. Y. 593, 599.)''

Certainly, in the light of such language and the reasonable explanation of the purpose of the two statutes under consideration, it cannot be implied that the Legislature has granted jurisdiction to the Surrogates' Courts over *inter vivos* trust investments in common trust funds. Had the Legislature intended the latter, it could easily have said so in simple and unmistakable language. In the present state of the law this court cannot assume a grant of jurisdiction over *inter vivos* trusts. Because of the presence of moneys from such trusts in the common trust fund in this matter, it is necessary to dismiss this proceeding for lack of jurisdiction. (*Matter of Simonson*, 271 App. Div. 420.)

In view of the foregoing, it is unnecessary to consider at this time the second objection, to wit, that of the sufficiency of the notice given under the statute. It is the rule that a court ordinarily will not pass upon a constitutional question if there is any other way of disposing of the case. Nevertheless, good reason exists here for a statement of this court's views as to the second objection, for eventually this objection must surely be determined. This decision may expedite a final determination of the issues herein for all concerned.

At the outset, it may be observed that with respect to this issue as to notice, the proceeding is virtually ex parte. (See *Title & Document Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 319; *United States Trust Co. of New York* v. *United States Fire Ins. Co.,* 18 N. Y. 199, 215.)

The objectants do not claim that the notice given herein by the petitioner was not in accordance with the provisions of the statute. (Banking Law, § 100-c.) The question of the constitutionality of the provision for notice contained therein is, therefore, squarely raised. The statute provides for two types of notice, at different times. First, the act (Banking Law, § 100-c, subd. 9) requires the common trustee to notify '' each person of full age and sound mind whose name and address is known to such trust company at the time of sending such notice and who is then known to it to be or to claim to be '' entitled to share in the income of the particular trust, and in the principal thereof if the time for distribution were to occur at the time of such notice. The notice must apprise such persons that moneys from such trust or fund '' have been

invested in such common trust fund and that from time to time additional moneys of such estate, trust or fund may be invested in said common trust fund without further notice * * *. There shall be included in or appended to such notice a copy of the provisions of this section in respect of the sending of such notice and of the judicial settlement of the accounts of such trust company for such common trust fund." The notice may be mailed to the address furnished by such persons to the trust company, or if none is furnished, " to the last postoffice address, if any, known to said trust company." It is further provided that failure to mail such notice shall not invalidate an investment, but the decree entered upon a later judicial settlement proceeding " shall not be conclusive " against any person to whom notice was required *unless* notice of all such investments made prior thereto " shall have been sent to such person at least thirty days prior to the entry of such decree or, if such notice is sent less than thirty days prior to the entry of such decree, unless such person shall fail within sixty days after the mailing of such notice to him to apply to vacate the said decree as to him." Further, if such notice is sent after the institution of a proceeding for the judicial settlement of the accounts of the common trustee, it shall state the date of each investment in the common fund of the moneys of the estate, trust or fund in which such person is interested, shall state that the proceeding is pending and where, or if sent after entry of the decree, it shall state such fact in addiion to such investments.

Second, the act (Banking Law, § 100-c, subd. 12) specifies the notice to be given upon the judicial settlement. It is by citation published for four weeks in a newspaper designated by the court " addressed generally without naming them to all parties interested in such common trust fund and in such estates, trusts or funds mentioned in the petition, all of which may be described in the notice or citation only in the manner set forth in said petition and without setting forth the residence of any such decedent or donor of any such estate, trust or fund." This subdivision 12 also provides for the appointment of two special guardians as mentioned at the beginning of this opinion " to appear as special guardian and attorney for each infant not appearing by his general guardian and to appear for each lunatic, idiot, habitual drunkard or other incompetent not appearing by a committee and *to appear for each other party known or unknown who does not otherwise appear in such*

*proceeding* who has or who may thereafter have any interest * * * '' in the income and principal respectively of such common trust fund. (Italics added.) The subdivision further provides: '' In any such accounting proceeding the notice or citation hereinabove prescribed shall be deemed sufficient notice to each party *known or unknown* having or who may thereafter have any interest in an estate, trust or fund any part of which shall have been invested in such common trust fund and each such person so interested may appear in such accounting proceeding and on his failure to appear shall be deemed to be represented in such proceeding by the person designated respectively as such guardian and attorney.'' (Italics supplied.) Subdivision 11 of said enactment prescribes what must be contained in the petition above referred to, to wit, (a) the name and address of the petitioner, (b) the date the fund was established, (c) the name under which the fund is known, (d) the date of the last previous judicial settlement, if any, and (e) a list of all participating estates, trusts or funds any part of which shall have been invested in the common fund, and the name of any cofiduciary acting with the petitioner of the participating estate, trust or fund. It provides that the participating estate, trust or fund may be '' described by stating: * * * in the case of an investment in behalf of a testamentary trust, the name of the decedent under whose will such trust was established and if there be more than one trust under such will, the number of the paragraph thereof establishing such trust or other appropriate identification; in the case of an investment in behalf of any other trust, the name of the grantor, donor, trustor or creator of the trust and the date of the instrument creating or defining such trust * * *.''

There are other provisions in the enactment relating to notice, such as the requirement (subd. 6) that no investment may be made in a trust fund or withdrawal made therefrom unless five days prior to the date of such investment or withdrawal the intention to make the same is noted on the records of the trust company; and the requirement (subd. 8) that if the company wishes to determine the value of the assets of the fund on any day besides the first day of each quarter, it must select the date at least a week beforehand at which time it must make a minute of such selected date in the records of the company. I do not find in the act a provision requiring the said records of the trust company to be open to the inspec-

tion of the interested persons at all reasonable business hours, so as to enable them to know when such entries have in fact been made, and to guard against entry *nunc pro tunc* after an occasion for such evaluation for the purpose of investment, withdrawal, or appraisal has occurred. Moreover, subdivision 8 further provides: " Any such valuation so made or action taken in reliance thereon, if made or taken in good faith and pursuant to such rules and regulations of the banking board, shall fully protect such trust company and shall not be questioned upon the settlement of any account relating to such fund." These latter provisions, however, are not before the court at this time for determination, and are mentioned merely to show the general tenor of the act respecting notice and its conclusiveness.

Petitioner contends that the notice provided by the statute is ample and more than is required by the due process clause of the Constitution. It is argued that less notice is required herein because this is merely a " judicial scrutiny " of the management of the fund, not binding upon the persons interested in the participating trusts, and some support for this position is found in *Matter of Bank of New York* (189 Misc. 459, 469–470 *supra*). As previously observed, subdivision 14 of section 100-c of the Banking Law, provides that the decree rendered on the judicial settlement shall be " binding and conclusive in respect of any matter set forth in the account settled " thereby, " upon all parties having or who may thereafter have any interest in such common trust fund or in any estate, trust or fund held by such trust company * * *." And we have noted above some of the respects in which the decree would affect substantial rights of the parties. Section 80 of the Surrogate's Court Act provides that the decree of this court is conclusive as to all persons over whom jurisdiction is obtained. (See *Matter of Killan*, 172 N. Y. 547, 553; *Matter of Altman*, 115 Misc. 476, 480.) In my opinion this proceeding must be deemed one in which is sought the judicial determination of substantial rights of the beneficiaries of the participating trusts. Accordingly, in order to obtain jurisdiction the notice provided in the statute must be sufficient to comply with the requirement of due process of law.

" Due process of law " cannot be defined with exactness. (*Ballard* v. *Hunter*, 204 U. S. 241, 255; *Bardwell* v. *Collins*, 44 Minn. 97, 101.) It is too broad a term to admit of a short definition which will cover every situation. " It is a principle

that lies at the foundation of all jurisprudence in civilized countries that a person must have an opportunity of being heard before a court can deprive him of his rights. * * * Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be * * * over the subject matter." (21 R. C. L., Process, § 3; and see *Lane* v. *Johnson,* 283 N. Y. 244, 253; *People ex rel. Levy Dairy Co.* v. *Wilson,* 179 App. Div. 416, 417.) In *Jacob* v. *Roberts* (223 U. S. 261, 265) the court said: " * * * the essential element of due process of law is an opportunity to be heard, and a necessary condition of such opportunity is notice. *Simon* v. *Craft,* 182 U. S. 427. But personal notice is not in all cases necessary. There may be, and necessarily must be, some form of constructive service. *Ballard* v. *Hunter,* 204 U. S. 241."

In *Roller* v. *Holly* (176 U. S. 398, 409) the court said: " It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose." It is elemental that in actions in rem or quasi in rem jurisdiction may be obtained through substituted service under certain circumstances (*Vatable* v. *N. Y. L. E. & W. R. R. Co.,* 96 N. Y. 50, 61–62; *Jacob* v. *Roberts, supra*), and such service is generally accomplished through publication and mailing of notice. (*City of New York* v. *Wright,* 243 N. Y. 80, 84.) In *Grannis* v. *Ordean* (234 U. S. 385, 395) the court stated that no unattainable standard of notice is required — only reasonable notice under the circumstances.

The question of notice before us involves the distinction between actions in rem, quasi in rem and in personam. Different notice may be required depending upon the character of the proceeding, and it is urged that the instant one is in rem and, therefore, that the statutory notice is sufficient. There has been considerable confusion as to whether a particular case is one in rem or in personam. Strictly speaking, an action in personam is one in which the court has no jurisdiction over a *res,* tangible or intangible, and a judgment for a sum of money is sought against a defendant. Actions " strictly *in rem* " are rare. They are deemed actions against a thing and " all the world ". In the days of prohibition they were sometimes found in actions entitled " *U. S.* v. *Ten Barrels of Whiskey* ". A proceeding to dispose of horses found at large in the highway in violation of law where their owner and keeper are unknown, is an action in rem. (*Campbell* v. *Evans,* 45 N. Y. 356.) A proceeding quasi in rem is the most common sort of so-called in

rem action. It is one to determine rights in a particular *res*, tangible or intangible, within the court's jurisdiction, in which many of the parties interested are known and whose rights in such *res* are to be determined. (*Title & Document Restoration Co.* v. *Kerrigan*, 150 Cal. 289, 306 *et seq., supra.*) The instant proceeding is such a case. (*McDaniel* v. *McElvy*, 91 Fla. 770, 799.) An action quasi in rem may also embody elements of one in personam. An action to foreclose a mortgage and obtain a deficiency judgment is an example of such combination, as is an action for divorce with a demand for alimony. An action to determine the ownership of real property without seeking a personal money judgment is generally one quasi in rem as distinguished from one strictly in rem or in personam, but some courts have declared such actions to be in personam. (*Webster* v. *Reid*, 11 How. [U. S.] 437, 459–460; *Bardwell* v. *Collins*, 44 Minn. 97, 101, *supra; State* v. *Guilbert*, 58 Ohio St. 575, 619.) In my opinion this unwarranted conclusion was reached in an effort to find relief from the rule which has authorized only slight notice in proceedings strictly in rem. It has been said that in an action strictly in rem no notice whatever is required except that resulting from the seizure of the *res* itself. That is not the rule, however, but only a consequence of the rule in certain cases. The fact is that there are varying kinds or degrees of notice required in actions in rem and quasi in rem. The essential distinction is not the illusory one of whether the action is strictly in rem or quasi in rem, but the nature of the *res* and the circumstances of the particular case or class of cases. Accordingly, the rule is that in all cases, in rem and quasi in rem alike, where substituted service is permitted, the notice to be given must be reasonable under the circumstances and the necessities of the particular case or class of cases. (*City of Buffalo* v. *Hawks*, 226 App. Div. 480, affd. 251 N. Y. 588; *City of New York* v. *Wright*, 243 N. Y. 80, 84, *supra; Hiller* v. *B. & M. R. R. Co.*, 70 N. Y. 223, 227; *United States Trust Co. of New York* v. *United States Fire Ins. Co.*, 18 N. Y. 199, *supra; Grannis* v. *Ordean*, 234 U. S. 385, 394, *supra;* Cooley on Constitutional Limitations [7th ed.], p. 582; 50 L. R. A. 600.) In the *Hawks* case, *supra,* at page 483, the Appellate Division said: " Substituted notice in such a case [where no personal judgment is sought] is sufficient, if it be reasonably probable that it will reach the person interested, and apprise him of what is going on, and will afford him an opportunity to come in and defend his property." This rule applies equally

to actions in personam against unavailable residents. (*Milliken v. Meyer*, 311 U. S. 457; *McDonald* v. *Mabee*, 243 U. S. 90.) In *Milliken* v. *Meyer* (*supra*, p. 463) the court said: "Its adequacy [substituted service] so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice (*McDonald* v. *Mabee, supra*) implicit in due process are satisfied."

The importance attached to making every reasonable effort to notify the interested persons, by mail or otherwise, is shown in the leading cases (in personam) on the question of service upon nonresident operators of automobiles. (*Hess* v. *Pawloski*, 274 U. S. 352; *Wuchter* v. *Pizzutti*, 276 U. S. 13.) In the *Hess* case (*supra*) in addition to service upon the Secretary of State, the statute provided for actual personal service on the defendant without the State; and it was upheld, as undoubtedly it would have been if it had provided for mailing only. In the *Wuchter* case (*supra*) there was provision for service on the Secretary of State, but neither he nor the plaintiff was required to notify the defendant by mail or otherwise. In fact, personal service was made on the defendant out of the State, but he did not appear in the case. The court held that the statutory provision did not constitute due process of law, for lack of notice, that it was, therefore, unconstitutional, and that the fact that personal service was made on the defendant did not correct it.

It has also been held that the fact that the defendant may not actually receive the mailed notice does not destroy the validity of the service. (*Shushereba* v. *Ames*, 255 N. Y. 490.) The recognized rule as to constructive service is further explained in *American Land Co.* v. *Zeiss* (219 U. S. 47) where Chief Justice WHITE said for the court at page 67: "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." This rule for constructive service obtains even in cases strictly in rem, where reasonable notice under the circumstances must be given to the interested parties in addition to the seizure of the *res*. (*Bradstreet* v. *Neptune Insurance Company*, 3 Sumn. 600, STORY, J.; *Windsor* v. *McVeigh*, 93 U. S. 274, 278–279; *Hassell* v. *Wilcox*, 130 U. S. 493, 504; *Griffin* v. *Griffin*, 327 U. S. 220, 228; *Matter*

of *Killan,* 172 N. Y. 547, *supra; Martin* v. *Central Vermont R. R. Co.,* 50 Hun 347, 350; *Thompson* v. *Auditor General,* 261 Mich. 624, 647, 652–654; 50 L. R. A. 597–600.) In *Martin* v. *Central Vermont R. R. Co. (supra,* p. 350) the court said: " We do not mean that against absent debtors the law may not authorize an attachment of the alleged debtor's property. It may thereby **acquire jurisdiction of** the thing; but in order to make that jurisdiction perfect it must give due notice to the owner before it attempts to divest his title. The attachment of the property is only one step; another and equally important step is the notice to the owner. (Cooley on Constitutional Limitation, 403; *Buchanan* v. *Rucker,* 9 East, 192; *Fenton* v. *Garlick,* 8 Johns., 194.) Such is the rule in proceedings strictly *in rem,* to which what is known as foreign attachment is analogous. Now, while it is true that this notice to the owner need not be personal, as he is out of the State, yet it must be, as said in the quotation above, ' adapted to the nature of the case.' If it be said that it rests with the legislature of the State in which the attachment is issued to declare what shall be a sufficient notice, the answer is that that may be so, provided there is. a reasonable and *bona fide* provision for giving notice. *But certainly a legislature cannot enact that no notice need be given, or make that a notice which is no notice at all. To do that would be a fraud on the Constitution."* (Italics supplied.)

It follows by reason of this rule that the notice required differs with the nature of the case. In *City of New York (801–815 E. New York Ave.)* (290 N. Y. 236, 240) the court said: " But the necessity of notice and hearing is not the same thing in all cases ". (See, also, *City of Buffalo* v. *Hawks,* 226 App. Div. 480, 485, affd. 251 N. Y. 588, *supra; City of Utica* v. *Proite,* 178 Misc. 925, 928, affd. 288 N. Y. 477; *Matter of 1175 Evergreen Ave.,* 158 Misc. 158, 163, affd. 270 N. Y. 436, affd. *sub nom. Lauro* v. *Barker,* 299 U. S. 521; *Ballard* v. *Hunter,* 204 U. S. 241, *supra.)*

The differences in notice requirements are based strictly on practical considerations. As a matter of public policy, a means for the exercise of jurisdiction is requisite. The extent and nature of the notice required depends upon the subject matter, the number and location of the interested parties and whether they are known to the plaintiff. Under the circumstances thus appearing, the difficulties of giving notice and the likelihood that the interested parties will receive some notice from the seizure of the *res* itself are important factors in determining

the extent of the notice required. For example, in the case of a ship, it is presumed to be in the charge of its owner or its agents. If seized, it is highly unlikely that the owner will not learn of it promptly. The same is true of the seizure of a man's domestic animals which are found at large. He or his agents must be in daily care of such stock. If seized, he will learn thereof, or at least learn that they are missing, and will thus be put on actual notice to look for them. A notice published in three public places for ten days pursuant to statute has been held due process under such circumstances. (*Campbell* v. *Evans,* 45 N. Y. 356, *supra.*) But where the *res* is such that its possession by another affords no notice to the interested parties, more direct notice is required if practical. (*Matter of City of N. Y.* [*Grand Boulevard*], 212 N. Y. 538; *Martin* v. *Central Vermont R. R. Co.,* 50 Hun 347, 350, *supra; Dorr's Adm'r.* v. *Rohr,* 82 Va. 359.) In *Matter of City of N. Y.* [*Grand Boulevard*] (*supra,* p. 544) CARDOZO, J., said: "The State * * * cannot shift upon him the burden of ascertaining that the proceedings are in motion. It must give him notice reasonably adapted to bring their pendency to his attention." In *Dorr's Adm'r.* v. *Rohr* (*supra*) the defendant was a nonresident creditor of a Virginian, and was indebted to another Virginian. The claim had been attached in Virginia and notice in such action was given to the nonresident defendant by publication only. The court said at pages 364–365: "The theory upon which in proceedings purely *in rem,* a seizure is notice and gives jurisdiction is, that the *res,* if not in the possession of the owner himself, is intrusted to an agent, who has the power, and whose duty it is to represent the owner and protect his interests. But assuming that an attachment proceeding is of a complex character, and in some of its features partakes of the nature of a proceeding *in rem — St. Clair* v. *Cox,* 106 U. S. 350 * * * — can such a principle apply to a case like the present? Does a garnishee represent his creditor, the principal defendant? "

So, in the instant case, can the common trustee, on a petition for settlement of its accounts, be deemed to represent the beneficiaries?

The test in these cases remains the practical one, to wit, the existence of available information as to the persons interested. Generally speaking, if their names and addresses are known, mailing of a copy of the notice will be required besides publication, and such mailing will be excused only as to unknowns.

(*United States Trust Co. of New York* v. *United States Fire Ins. Co.*, 18 N. Y. 199, *supra; Matter of 1175 Evergereen Ave.*, 158 Misc. 158, affd. 270 N. Y. 436, affd. 299 U. S. 521 *sub nom. Lauro* v. *Barker, supra; Clement* v. *May*, 136 App. Div. 199, 203.) In the first of the cited cases a bank had failed and a receiver was appointed, which facts the court said were notorious and presumably common knowledge. There was a large number of persons interested. Notice was mailed to all known interested persons within the county where the bank was located and published as to the rest. The court held that it was likely that the stockholders would be on the alert to read advertisements and to hear the general talk about the matter, and that it was impractical to give better notice than the statute required.

It is of course fundamental that a statute which in a proceeding in rem authorizes a determination with respect to a person's property within the control of the court without any notice whatever to such person is unconstitutional. (*Stuart* v. *Palmer*, 74 N. Y. 183.) It is equally fundamental, as stated in the last cited case, at page 188, that the nature of the notice to be required is a matter for the Legislature to determine, so long as it is a reasonable notice under the circumstances. (And see *United States Trust Co. of New York* v. *United States Fire Ins. Co., supra; City of Buffalo* v. *Hawks*, 226 App. Div. 480, *supra;* 50 L. R. A. 599.) But the Legislature can no more prescribe a kind of notice which is not calculated to notify than it can dispense entirely with a provision for notice. (*Lane* v. *Johnson*, 283 N. Y. 244, 253, *supra; Happy* v. *Mosher*, 48 N. Y. 313, 317-318; *City of Buffalo* v. *Neubeck*, 209 App. Div. 386, 391; *Matter of Galvin*, 153 Misc. 11; *Clarke* v. *Carlisle Foundry Company*, 150 Misc. 710, 712; 16 C. J. S., Constitutional Law, § 619, p. 1256.)

This brings us to an immediate consideration of the statute in question. As I view it, the only provision therein, in substance, for notice upon judicial settlement is that contained in subdivision 12 of section 100-c of the Banking Law, to wit, publication alone without naming or mailing to the interested persons. It is argued that the provisions of subdivision 9, quoted above, for mailing notice of the first investment in the common fund constitutes a sufficient mailing in addition to the publication, because the notice must be accompanied by a copy of the provisions of the law relating to notice and judicial settlement. If the argument were not supported by the express

language of the act, it might be termed ridiculous. Since it has been incorporated into the plan of the statute, it can only be said that it is insufficient in law as a substitute for mailing notice of judicial settlement. It only purports to advise the interested persons of what the law is, and not of any pending or impending settlement proceeding therein. Since everyone is presumed to know the law, enclosing a copy of it amounts to no more than a favor without legal significance. It constitutes notice of nothing.

The provision for preliminary notice prior to making the first investment is an outgrowth of judicial decision, particularly the case of *Matter of Union Trust Co. (Hoffman Estate)* (219 N. Y. 514) decided in 1916. That case involved a trustee's investment of trust funds in a participating mortgage, at which time the trustee notified the trust beneficiaries. They received the benefits of the investment until it went bad, and then sued the trustee for unlawful investment of trust funds. The court held that the beneficiaries could not have their cake and eat it too, and that they were estopped from objecting because of their silence after notice of the investment and receiving the benefits thereof. Thereafter the Legislature amended subdivision 7 of section 188 (L. 1917, ch. 385) of the Banking Law, authorizing the investment of trust funds in participating mortgages upon a similar notice to the trust beneficiaries. It was held thereunder that prompt notice of investment was required to be made to the beneficiaries. (*Matter of Bearns,* 251 App. Div. 222, affd. 276 N. Y. 590; *Matter of Ryan,* 291 N. Y. 376, 408.) Later this provision of the law was repealed (L. 1937, ch. 619, § 3), at which time a new law was enacted (Banking Law, § 100-b). At the same time section 100-c of the Banking Law was enacted which incorporated the same provision for notice of first investment. It is in the nature of an estoppel provision. The primary purpose thereof is to estop trust beneficiaries from objecting to investments of their trust funds in the common trust made pursuant to the notice prior to such objection, after receiving the benefits of the investments, and possibly to forestall objections to such investments where there may be doubt as to the authority of the trustee to make the same. It may be effective to accomplish such purposes. It should be noted, however, that such issue is one which is not adjudicated in the settlement of the account relative to the common trust fund (*Matter of Bank of New York,* 189 Misc. 459, *supra*); and it is designed to protect the trustee in its accounting in the under-

lying trust. The estoppel notice was not formerly used as a substitute for notice of the proceeding to settle the trustee's accounts, but separate citation therefor was used. (*Matter of Union Trust Co.* [*Hoffman Estate*], 219 N. Y. 514, *supra*.) The estoppel notice is wholly unrelated to this judicial settlement proceeding. The attempt in subdivision 9 of the enactment to tie it into the judicial settlement proceeding is ineffective.

Accordingly, we have left the question whether or not the notice of judicial settlement by publication as provided in subdivision 12 is sufficient. Here it should be noted that in the petition for judicial settlement the names of many of the beneficiaries of the underlying trusts are set forth. Because subdivision 12 authorized it, petitioner omitted from its citation herein even the names of such known beneficiaries. Moreover, pursuant to the subdivision and court order, publication was made in only one newspaper, the *Daily Record*, a paper principally used for legal notices, having a large circulation among lawyers and business houses, but a very limited circulation amongst laymen as compared with a daily newspaper. It contained the bare requirement of the statute as above outlined. Thus the likelihood that anyone would recognize that he, a friend, relative or client had an interest in the accounting proceeding and that actual notice would reach the interested parties was reduced to a minimum. When the petitioner filed its petition and account and issued said citation, it knew the names and addresses of the income beneficiaries of the participating trust, because it was paying the income to them periodically. Within fifteen months it had mailed notices, as provided in subdivision 9 of the section, to them and to those persons who would be entitled to the principal if it were then time for distribution thereof. Being possessed of all that information it could easily have laid the groundwork for substituted service in accordance with the generally accepted provisions of the law obtaining in this State for such service. But the statute did not provide for it or authorize it, and it was not done. Moreover, it is not what the court might do to cure a defective statute, but what might be done under the statute, that determines it validity. (*Stuart* v. *Palmer*, 74 N. Y. 183, *supra*; *Wuchter* v. *Pizzutti*, 276 U. S. 13, 24, *supra*.)

As before noted, substituted service is based upon the necessities of the case or type of case in general. The Legislature must provide for a kind of notice which is reasonably calculated

to bring to the attention of the interested parties the fact that an action has been instituted. Where the opportunity of the petitioner to know the names and addresses of the interested parties and to reach them personally or by mail is slight, the notice required by him may be correspondingly less certain to notify. The test of a reasonable requirement is applied. Where the Legislature knows that the trust company of necessity would have the names and addresses of the income beneficiaries, as well as of most of the persons presently interested in the principal, it is not due process of law to excuse the naming of such persons in the citation, or the mailing to them of notice of the judicial settlement proceeding as well as publishing, without any showing of a lack of knowledge of the interested parties. (See *Smetal Corporation* v. *West Lake Investment Co.*, 126 Fla. 595, 629.)

The legislation is discriminatory on its face. In subdivision 9 it provides for mailing a notice to the beneficiaries as an estoppel *to protect the trustee* against the beneficiaries in a subsequent accounting in the underlying trusts. But then in subdivision 12 it excuses the listing of the beneficiaries and the mailing of the notice of judicial settlement to them, a matter *for their protection,* presumably on the theory that they would be too numerous and would not be known to the trustee, and that the notice provided was the best that could be given as a practical matter. If a notice could be given by mail for one purpose, it could be for the other.

It is probable that pending the judicial settlement proceeding and before entry of final decree some of the interested persons will die or become incapacitated, and it is argued that therefore it is impractical to give complete notice by mail. That same argument may be made concerning certain provisions for notice by mail in other proceedings under the Surrogate's Court Act and the Civil Practice Act. Moreover, if the Legislature sees fit, it may enact a *lis pendens* provision effective from the date of filing the petition and account. It is also argued that regardless of the above considerations, as the size of the common trust fund grows, it will be impractical to ascertain the names of the interested parties and to give them notice by mail. The argument is without merit. The fact that a giant corporation has millions of stockholders is no excuse for omitting notice to them of stockholders' meetings and other corporate actions. The ability to give proper notices should keep pace with the growth of the unit. It may not be necessary for

the Legislature to provide that the trust company must serve by mail all whom it could ascertain with due diligence, but it must, under these circumstances, require mailing to those of whom the trustee has knowledge, including those of whom it could learn by reasonable inquiry. (*Title & Document Restoration Co.* v. *Kerrigan,* 150 Cal. 289, 317–318, *supra.*)

It is apparent that the provision for notice in the statute before us is not calculated to notify. In fact, it appears to be a colorable and illusory provision that seems to provide for notice and yet is calculated not to give notice, and it is therefore invalid. (*Happy* v. *Mosher,* 48 N. Y. 313, 317–318, *supra; King Tonopah Mining Co.* v. *Lynch,* 232 F. 485, 494; *Pinney* v. *Providence Loan & Investment Co.,* 106 Wis. 396, 403; 16 C. J. S., Constitutional Law, § 619, p. 1256.)

It has been held in an action quasi in rem to determine rights to the use of water in a certain creek, that a statute which authorizes the issuance of a summons without naming the interested parties, although personal service might be had as to some, is unconstitutional. (*Bear Lake County* v. *Budge,* 9 Idaho 703, 711–715; and similarly, *State* v. *Guilbert,* 58 Ohio St. 575, 617–618, *supra.*) In the *Budge* case (*supra,* p. 714) the court said: " The court is authorized, by said act, to procure jurisdiction of the person and to settle by judgment and decree valuable property rights; not by due process of law; not by service of summons as provided by the general law of the state for the service thereof which operates alike upon all citizens of the state and others desiring to have their titles quieted, but by a special, limited and constructive service that is not permitted by the general law of the state. Of course if defendants are in reality unknown, or if known and reside outside of or cannot be found, within the state, publication of summons must, of necessity, be sufficient as provided by our statutes. But in such cases when the name and postoffice address of the defendant is known, a copy of the summons and complaint must be sent to him by mail.''

In *Title & Document Restoration Co.* v. *Kerrigan* (150 Cal. 289, *supra*) the court discussed the case of *State* v. *Guilbert* (*supra*) and said at page 317: " * * * the law there involved did not require personal service of summons or notice even upon resident claimants, whose existence, names, and places of abode were all known to the plaintiff or petitioner. The same defect attached to the statutes which were declared null in *Brown* v. *Board,* 50 Miss. 471, and *Webster* v. *Reid,* 11 How.

(U. S.) 437. That, as to such defendants, a service by publication is not sufficient to constitute due process of law in a proceeding not strictly *in rem* must be admitted.''

Likewise, in a tax foreclosure action where the statute did not require such a publication of the description of the realty involved as to apprise a reader of its nature and location, publication thereunder was held insufficient constructive notice, not due process of law, and the statute was declared unconstitutional. (*Thompson* v. *Auditor General*, 261 Mich. 624, 647 *et seq., supra.*)

It is also held that jurisdiction may not be obtained over a known party by citing him as an unknown. (*Busby* v. *Maus*, 294 Ill. 401, 407.) In an action quasi in rem for the foreclosure of a mortgage where no deficiency judgment was sought, it was held that a statute which authorized service by publication alone upon the interested parties, although their names and places of residence within the State were known to the plaintiff, was unconstitutional. (*Bardwell* v. *Collins*, 44 Minn 97, *supra.*)

It has been held that a notice returnable in five days, although valid as to resident parties, would not constitute '' due process '' of law as to nonresident parties who could not reasonably be expected to appear on such short notice; and it is said that inadequate notice is no better than no notice. (*Roller* v. *Holly*, 176 U. S. 398, 409, *supra; Clarke* v. *Carlisle Foundry Company*, 150 Misc. 710, 712, *supra.*) The foregoing is summed up in Ruling Case Law (Vol. 21, Process, § 32, p. 1289), as follows: '' As to resident defendants whose existence, names, and places of abode are known, service by publication is not sufficient to constitute due process of law.''

It is further argued that the Uniform Common Trust Fund Act of 1938 (9 Uniform Laws Ann., p. 157) does not provide for any notice, and that the instant statute is valid because it provides for some notice. The argument has little weight because that act is entirely different from the one before us. The Uniform Common Trust Fund Act in substance grants a license to trustees to commingle trust funds. Nothing is final or conclusive upon the beneficiaries of the underlying trusts under that act. The trustee of the common fund is not even required to render an accounting therein, that being left to the underlying trusts. However, if for any reason the trustee wishes an accounting, it may have it '' on such conditions as the court may establish.'' (Uniform Common Trust Fund Act [1938], § 2.)

Such provision in the Uniform Common Trust Fund Act for notice as the court may direct is a time-honored and proper one. Under such a provision upon a proper showing the court must determine in each case what notice is reasonable and best suited to bring the matter to the attention of the interested parties so that they may be heard. The court's discretion in this matter, of course, is subject to review; but if the notice given is deemed reasonable, such statutory provision and the notice thereunder are held to afford " due process of law ". (*Matter of Union E. R. R. Co. of Brooklyn,* 112 N. Y. 61, 72 *et seq.; Goodrich* v. *Ferris,* 214 U. S. 71, 80; and see *Montgomery Co. Bar Assn.* v. *Rinalducci,* 329 Pa. 296.) This principle has been adopted frequently by the Legislature in respect of the Surrogate's Court Act which contains many provisions for notice as directed by the surrogate in his discretion.

Petitioner has relied strongly on *Goodrich* v. *Ferris,* (*supra*). The case is not in point because the statute, in addition to the requirement of posting three notices for ten days, contained the following provision: " If, upon the final hearing at the time of the settlement, the court, or a judge thereof, should deem the notice insufficient for any cause, he may order further notice to be given as may. be proper." As shown above, such a statutory provision has been generally recognized as proper. In this case the court's primary concern as to the validity of the statute was in respect of the length of notice, namely, ten days; and it was held that no substantial constitutional question was involved. It further appeared therein that there was no basis for the court to know of the existence of the claimant; and so no question was raised as to the improper exercise of the court's discretion. Rather, the claim made in this respect was that a fraud had been practiced on the court by the executor's failure to disclose the existence of the claimant. Clearly, the determinations made in that case are of no value to the petitioner herein.

Note the contrast between the Uniform Common Trust Fund Act and the provisions of section 100-c of the Banking Law. In the latter it is not left to the court's discretion to determine the sufficiency of the notice to be given in each particular case. In fact, by strong implication, this statute (subd. 12) even excludes the exercise of such discretion by the court, except to designate the newspaper to carry the names of the trust estates involved. Moreover, the act *requires* a periodic accounting, and such accounting is *conclusive* upon the beneficiaries of the

underlying trusts, if the " estoppel notice " by mail is origi-
nally given to them of the investment of funds from such under-
lying trusts into the common trust. No case has been cited
which holds that under circumstances contemplated in this legis-
lation the limited notice authorized is sufficient. The statute
does not meet the test that the notice required be such that it is
" reasonably probable that it will reach the person interested,
and apprise him of what is going on, and will afford him an
opportunity to come in and defend his property." (City of
Buffalo v. Hawks, 226 App. Div. 480, 482–483, affd. 251 N. Y.
588, supra.)

In Clement v. May (136 App. Div. 199, 203, supra) the court
said: " The Legislature has uniformly acted upon that under-
standing of the Constitution and has provided for the service
of process or notice upon natural persons by posting, publica-
tion, by mail, by leaving the notice at the parties' place of resi-
dence or by leaving it with the person in whose possession the
property may be found." (And see Prosperity Co. v. Ameri-
can Laundry Machinery Co., 271 App. Div. 622, 629–630; King
Tonopah Mining Co. v. Lynch, 232 F. 435, supra.) In the last
cited case, in holding the statute unconstitutional, the court said
at page 493: " The method of service employed in this case
presents a striking contrast to other modes of constructive serv-
ice provided by the Nevada statutes."

So, in this instance, the legislation presents a striking depar-
ture from the previous concepts of " due process of law " in this
State. It might also be considered that this legislation violates
the constitutional provisions for equal protection under the law
and that no special legislation shall be enacted granting special
benefits and privileges to some but not all persons similarly
situated (see Bardwell v. Collins, 44 Minn. 97, supra; State v.
Guilbert, 58 Ohio St. 575, supra; Bear Lake County v. Budge,
9 Idaho 703, 715, supra; United States v. Yount, 267 F. 861;
but see Title & Document Restoration Co. v. Kerrigan, 150 Cal.
289, 321 et seq., supra.) In any event, however, it clearly fails
to provide the kind of notice which the conscience of the People
of the State of New York, as expressed by the Constitution,
the Legislature, and the courts, has heretofore always required.

For this reason also the petition herein is dismissed.

Submit decree accordingly.